# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

CHAMBERS OF
**DEBORAH L. BOARDMAN**
**UNITED STATES MAGISTRATE JUDGE**

**101 WEST LOMBARD STREET**
**BALTIMORE, MARYLAND 21201**
**(410) 962-7810**
**Fax: (410) 962-2577**
**MDD_DLBChambers@mdd.uscourts.gov**

May 26, 2021

LETTER TO COUNSEL

      RE:    *Charlene S. v. Saul*
             Civil No. DLB-20-853

Dear Counsel:

On April 1, 2020, plaintiff petitioned this Court to review the Social Security Administration's ("SSA's") final decision to deny her claims for Disability Insurance Benefits and Supplemental Security Income.  ECF 1.  I have considered the parties' cross-motions for summary judgment and plaintiff's response.  ECF 14 ("Pl.'s Mem."); ECF 15 ("Def.'s Mem."); ECF 16 ("Pl.'s Reply").  I find no hearing necessary.  *See* Loc. R. 105.6 (D. Md. 2018).  This Court must uphold the denial if the SSA employed correct legal standards in making findings supported by substantial evidence.  42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).  Under that standard, I will deny both motions, reverse the Commissioner's decision in part, and remand the case to the Commissioner for further consideration.  This letter explains my rationale.

Plaintiff filed her claims for benefits on August 10, 2017, alleging an onset date of January 30, 2012.  Administrative Transcript ("Tr.") 458–68.  The SSA denied her claims initially and on reconsideration.  Tr. 267–69, 303–05.  An Administrative Law Judge ("ALJ") held a hearing on March 19, 2019. Tr. 103–42. Following the hearing, the ALJ determined plaintiff was not disabled within the meaning of the Social Security Act during the relevant time frame.  Tr. 39–55.  Because the Appeals Council denied plaintiff's request for review, the ALJ's decision constitutes the final, reviewable decision of the SSA.  Tr. 1–7; *see Sims v. Apfel*, 530 U.S. 103, 106-07 (2000); 20 C.F.R. § 422.210(a).

The ALJ found plaintiff severely impaired by "obesity, osteoarthritis of the bilateral knees, rheumatoid arthritis (RA), disorder of the lumbar spine, depression, post-traumatic stress disorder (PTSD), anxiety, hypothyroidism, and fibromyalgia."  Tr. 45.  Despite these impairments, the ALJ determined plaintiff retained the residual functional capacity ("RFC") to:

*Charlene S. v. Saul*
Civil No. DLB-20-853
May 26, 2021
Page 2

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except
> that [she] is limited to lifting and carrying from waist to chest level and carrying
> for short distances such as in a small office setting (from one room to an adjacent
> room). [Plaintiff] has to avoid crawling, kneeling[,] and climbing, but she can
> perform other postural movements on an occasional basis. [Plaintiff] is limited to
> low stress tasks with low stress defined as requiring work with minimal changes in
> the routine and work that allows her to have no more than occasional, brief[,] and
> superficial interaction with the public and co-workers. [Plaintiff] is limited to
> frequent fingering, grasping, and handling. [Plaintiff] has to avoid working around
> hazards such as moving dangerous machinery and unprotected heights.

Tr. 48–49. After considering the testimony of a vocational expert ("VE"), the ALJ determined plaintiff was not able to perform her past relevant work as an office manager but could perform other work existing in significant numbers in the national economy. Tr. 53–54. Therefore, the ALJ concluded plaintiff was not disabled. Tr. 55.

On appeal, plaintiff argues the ALJ's decision does not comply with the requirements of *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015), with respect to plaintiff's concentration, persistence, or pace limitation. Plaintiff further argues the ALJ's decision does not comply with Social Security Ruling ("SSR") 12-2p, 2012 WL 3104869 (July 25, 2012), or with *Arakas v. Commissioner, Social Security Administration*, 983 F.3d 83 (4th Cir. 2020), with respect to plaintiff's fibromyalgia. I agree that the ALJ erred in assessing plaintiff's fibromyalgia. Accordingly, I remand, but I express no opinion as to plaintiff's ultimate entitlement to benefits.

Fibromyalgia is assessed using a two-step framework. 20 C.F.R. §§ 404.1529, 416.929; SSR 12-2p. First, ALJs must assess the objective medical evidence and determine whether the plaintiff has a medically determinable impairment. *Id.* §§ 404.1529(b), 416.929(b); SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). Second, if the ALJ finds a medically determinable impairment, the ALJ assesses the plaintiff's symptoms to determine how the symptoms' intensity and persistence affect the plaintiff's ability to work. *See* 20 C.F.R. §§ 404.1529(c), 416.929(c); SSR 16-3p. At the second step, the plaintiff is not generally required to produce objective evidence of the pain itself or its intensity. *Walker v. Bowen*, 889 F.2d 47, 49 (4th Cir. 1989). The Fourth Circuit recently held that this evidentiary rule is particularly forceful in cases where plaintiffs are impaired by fibromyalgia—"a disease whose symptoms are entirely subjective, with the exception of trigger-point evidence." *Arakas*, 983 F.3d at 97 (citing *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996)). Because "[o]bjective indicators such as normal clinical and laboratory results simply have no relevance to the severity, persistence, or limiting effects of . . . fibromyalgia," the Fourth Circuit held that "ALJs may not rely on objective medical evidence (or lack thereof)—even as just one of multiple factors—to discount a claimant's subjective complaints regarding symptoms of fibromyalgia." *Id.*

The Commissioner argues that "this case can be distinguished from the Fourth Circuit's recent decision in *Arakas*" and characterizes the holding of that case as "finding remand appropriate where the ALJ 'effectively require[d]' objective evidence or offered evidence as the

*Charlene S. v. Saul*
Civil No. DLB-20-853
May 26, 2021
Page 3

'chief' or 'definitive' reason for discounting complaints as to the intensity and severity of the claimant's symptoms of fibromyalgia." Def.'s Mem. 18 (internal citation omitted). This characterization of *Arakas* is inaccurate and ignores the precedential value of that case. The Fourth Circuit in *Arakas* discussed several errors with respect to the ALJ's evaluation of the plaintiff's fibromyalgia. *See* 983 F.3d at 94–98 (containing part III.A of the opinion and discussing errors related to the ALJ's utilization of the two-step symptom-evaluation framework found in 20 C.F.R. §§ 404.1529, 416.929); *id.* at 98–102 (containing part III.B and generally discussing errors rendering the ALJ's decision unsupported by substantial evidence with respect to the ALJ's evaluation of the plaintiff's fibromyalgia).

The Court's novel insight came in part III.A of the opinion, which discussed the ALJ's evaluation of the plaintiff's fibromyalgia symptoms. The Fourth Circuit identified at least two separate-but-related errors—one of which arose because "the ALJ disregarded . . . longstanding precedent" and "'applied an incorrect legal standard' in discrediting [the plaintiff's] complaints based on the lack of objective evidence corroborating them." 983 F.3d at 95–96 (citing and quoting *Hines v. Barnhart*, 453 F.3d 559 (4th Cir. 2006)). As to the long-recognized error, because "a claimant is entitled to rely exclusively on subjective evidence to prove the second part of the [symptom-evaluation] test," the Court noted that the ALJ in *Arakas* "improperly increased [the plaintiff's] burden of proof by effectively requiring her subjective descriptions of her symptoms to be supported by objective medical evidence." *Id.* (quoting *Hines*, 453 F.3d at 565 and *Lewis v. Berryhill*, 858 F.3d 858, 866 (4th Cir. 2017)); *see* 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your pain . . . solely because the available objective medical evidence does not substantiate your statements."); SSR 16-3p, 2017 WL 5180304, at *5. That error, however, has existed for years, and the Fourth Circuit has recognized it in some form since the 1980s. *Arakas*, 983 F.3d at 95. "In fact, the two-step process that the SSA uses to evaluate symptoms was born out of a long history of disagreements between [the Fourth Circuit] and the agency over this very issue." *Id.* (citing *Hines*, 453 F.3d at 564–65 (providing a detailed history of the evolution of the two-step framework in the Fourth Circuit)).

That doctrine's applicability is not confined to those impairments that are difficult to measure through objective evidence. *See id.*; *see, e.g.*, *Lewis*, 959 F.3d at 864–66 (finding that, where the plaintiff was severely impaired by "obesity, degenerative disc disease/thoracic outlet syndrome, diabetes mellitus, lupus, and depression with complaints of anxiety," the ALJ erred because his "determination that objective medical evidence was required to support [the plaintiff's] evidence of pain intensity improperly increased her burden of proof") (citing 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2)). To be sure, the Court also discussed how such an error "is particularly pronounced in a case involving fibromyalgia—a disease whose 'symptoms are entirely subjective,' with the exception of trigger-point evidence." *Id.* at 96 (quoting *Sarchet*, 78 F.3d at 306). The ALJ "relied principally" on normal objective evidence to discount the plaintiff's complaints, "effectively requir[ing] objective evidence for a disease that eludes such measurement, which was doubly erroneous." *Id.* (citing *Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir. 2003)); *see also Green-Younger*, 335 F.3d at 108–09 ("[P]hysical examinations will usually yield normal results . . . . Hence, the absence of swelling joints or other orthopedic and neurologic

*Charlene S. v. Saul*
Civil No. DLB-20-853
May 26, 2021
Page 4

deficits is no more indicative that the patient's fibromyalgia is not disabling than the absence of a headache is an indication that a patient's prostate cancer is not advanced.") (internal quotation marks omitted).  With this framework in mind, the Fourth Circuit "reiterate[d] the longstanding law in our circuit that disability claimants are entitled to rely exclusively on subjective evidence to prove the severity, persistence, and limiting effects of their symptoms." *Arakas*, 983 F.3d at 98.

But *Arakas* was not merely a review and application of existing law.  The Court took the foregoing framework one step further in cases where plaintiffs allege disability due to fibromyalgia.  *See id.* at 96 n.4 ("[N]o published Fourth Circuit case has yet addressed how fibromyalgia symptoms should be evaluated in SSA proceedings.").  The Court observed that "[a] growing number of circuits have recognized fibromyalgia's unique nature and have accordingly held that ALJs may not discredit a claimant's subjective complaints regarding fibromyalgia symptoms based on a lack of objective evidence substantiating them."  *Id.* at 97.  The Court "join[ed] those circuits by holding that ALJs may not rely on objective medical evidence (or lack thereof)—even as just one of multiple factors—to discount a claimant's subjective complaints regarding symptoms of fibromyalgia or some other disease that does not produce such evidence." *Id.*  "Objective indicators," the Court explained, "simply have no relevance to the severity, persistence, or limiting effects of a claimant's fibromyalgia, based on the current medical understanding of the disease."  *Id.*  Thus, while prior to *Arakas* it would have been error to "effectively require" objective evidence substantiating a claimant's fibromyalgia symptoms, after *Arakas* an ALJ commits legal error simply by discounting a claimant's symptoms using objective evidence.

Considering the above, the Commissioner's argument that this case is distinct from *Arakas* is unpersuasive.  The Commissioner focuses on whether the ALJ effectively required objective evidence rather than whether the ALJ "rel[ied] on objective medical evidence (or lack thereof)— even as just one of multiple factors—to discount [plaintiff's] subjective complaints regarding [her] symptoms of fibromyalgia." *See Arakas*, 983 F.3d at 97; Def.'s Mem. 14–19.  A review of the record confirms that the ALJ did use objective evidence to discount plaintiff's fibromyalgia.  In particular, the ALJ's discussion of Dr. Michael Crouch's treatment notes violates *Arakas*' clear mandate:

> In October of 2016, . . . [plaintiff] alleged having left finger pain and knee pain. She reported that her hands were swollen in the mornings and that she had pain down her legs as well as muscle spasms. . . . Dr. Crouch's impression was fibromyalgia, history of positive ANA, obesity, history of thyroid nodule and hypothyroidism, hypertension[,] and numbness left ulnar distribution. *However*, on physical examination, the claimant did not show any outward signs of discomfort.  She had no edema.  Her blood pressure was 128/88.  Her PIPs and MCPs were not swollen.  Her ankles and toes were okay.  Her lungs were clear. Her heart was regular.  She had intact strength and moved "well."
>
> . . .

*Charlene S. v. Saul*
Civil No. DLB-20-853
May 26, 2021
Page 5

> In March 2017, [plaintiff] saw Dr. Crouch for a check-up.  She had ankle and low
> back pain.  She reported problems walking.  *However*, her physical examination
> was stable.  She had no drop foot.  She underwent a trigger point injection.  In
> September of 2017, the claimant saw Dr. Crouch for a check-up.  [Plaintiff] alleged
> having trouble navigating stairs.  She reported that Savella was helping to manag[e]
> her back pain.  She alleged having sweating and rapid heart beating at times.  She
> alleged that her trigger point injection had not helped with her back pain.  Dr.
> Crouch recommended conservative treatment for [plaintiff's] back pain.  [Plaintiff]
> was prescribed Cymbalta as well.
>
> . . .
>
> In December 2017, Dr. Crouch saw [plaintiff].  [Plaintiff] had pain over [her] great
> toe and right thigh.  She also had pain over the left arm.  She had some pain with
> range of motion over the wrists.  *However*, there was no swelling.  She had some
> tenderness over the upper arms, trapezius, SPIS, iliac crests, trochanters, and
> anserine areas, left more than right.  She had no crepitus.  She had a good range of
> motion over the hips.

Tr. 50–52 (emphasis added).

*Arakas* forbids ALJs to discount a plaintiff's fibromyalgia symptoms using objective
evidence (or lack thereof).  983 F.3d at 97.  The above passages make clear the ALJ violated that
mandate in plaintiff's case.  Plaintiff's regular heart, normal blood pressure, joints without
swelling, clear lungs, and intact strength are objective medical findings that bear no relation to the
severity of plaintiff's fibromyalgia except to the extent that they confirm fibromyalgia—rather
than some other illness that produces similar symptoms—was the underlying cause of the
symptoms.  Tr. 50; *see Arakas*, 983 F.3d at 97–98 ("Objective indicators such as normal clinical
and laboratory results simply have no relevance to the severity, persistence, or limiting effects of
a claimant's fibromyalgia, based on the current understanding of the disease.  If considered at all,
such evidence—along with consistent trigger-point findings—should be treated as evidence
*substantiating* the claimant's impairment.") (emphasis in original).  Similarly, plaintiff's stable
physical examination and lack of drop foot are irrelevant to the severity of plaintiff's fibromyalgia
as objective findings that would typically be normal when someone is impaired by fibromyalgia.
*See* Tr. 50–51.  And, though the ALJ characterized her physical exam as "stable" based on the
treatment notes, those notes actually indicate plaintiff's right ankle, upper arms, upper and lower
backs, "SPISs (left more than right)," lumbar sacral junction, thighs, and anserine areas were all
tender.  Tr. 1023.  At that same appointment, Dr. Crouch injected plaintiff with "40 mg Kenalog
and 2ml of l[i]docaine using . . . a 25 gauge needle."  Tr. 1023.  If her physical examination was
"stable," it appears to have been stable in the sense that plaintiff continued to experience
widespread pain.  Finally, the ALJ's notation of plaintiff's lack of swelling or crepitus and a "good
range of motion over the hips" amounts to impermissible use of objective evidence to discount
plaintiff's fibromyalgia symptoms.  *See* Tr. 51–52.  That the ALJ used these findings to discount

*Charlene S. v. Saul*
Civil No. DLB-20-853
May 26, 2021
Page 6

plaintiff's symptoms is clear because he set off the objective findings in each instance with "however."  *See* Tr. 50–52.

The Commissioner does not directly address *Arakas*' prohibition on using objective evidence "even as just one of multiple factors" to discount a plaintiff's fibromyalgia symptoms. *See Arakas*, 983 F.3d at 97; Def.'s Mem. 13–20. To the extent his memorandum may otherwise be read to imply that proposition, I disagree.  The Commissioner concedes that the ALJ considered objective evidence from Dr. Crouch related to plaintiff's physical limitations but argues the ALJ considered that objective evidence in reference to plaintiff's "impairments other than fibromyalgia."  *See id.* at 15 ("[T]he ALJ's statement that Dr. Crouch recommended conservative treatment was clearly in reference to her severe back impairment, not her fibromyalgia ("Dr. Crouch recommended conservative treatment for the claimant's back pain") (Tr. 51, citing Tr. 938)."); 15–16 ("[N]otations [of no swelling or good range of motion] . . . refer to impairments other than fibromyalgia.  For example, the ALJ noted [p]laintiff had some pain with range of motion over the wrists, but not swelling (Tr. 52, citing Tr. 1019–29), referring to her rheumatoid arthritis and mild osteoarthritis of the hand with questionable fusion deformity (Tr. 50, citing Tr. 918, 920)).  The Commissioner's argument is without merit for two primary reasons.[1]

First, Dr. Crouch submitted several treatment notes pertaining to plaintiff's applications for benefits.  *See* Tr. 934–45, 1018–31. Dr. Crouch's records indicate that he primarily treated her for fibromyalgia.  *See* Tr. 943–45 ("She says she has lupus she may well have but that is based on positive ANA. . . . It is not clear if this is an autoimmune disease or not.  She does have some findings which could be consistent with that.  She has a fair amount of muscle tenderness which is not suggestive of an autoimmune disease but she has a painful range of motion in the right wrist which is not explained."); Tr. 1026 ("She has been told, appropriately I believe, that she has fibromyalgia.  Has pain in her legs, up and down the arms, hands, back, if she stands too long or walks too much. . . . She had some pain in her left rib cage—was told in the ER that it was RA? . . .  Impression: fibromyalgia; positive ANA; obesity, [history] of thyroid nodule; [high blood pressure]"); Tr. 1024 ("Impression: fibromyalgia; positive ANA (at least in the past); obesity; hypertension; history of thyroid nodule and hypothyroidism; numbness, left ulnar distribution.  Discussion:  Although she has some symptoms in the hands she does not have synovitis and she did not respond to Medrol.  She is tender in a bunch of spots that are most consistent with fibromyalgia which I think is still the most likely diagnosis."); Tr. 1023 (noting widespread pain and "no symptoms that otherwise suggest an autoimmune disease" and containing an impression of "fibromyalgia, positive ANA, obesity, [history] of thyroid nodule, [and high blood pressure]."); Tr. 1022 (noting that "[n]o combination [of medication] is likely to extinguish her pain though it may be deceased to a considerable degree with centrally acting medications," "[t]he trigger point injection did help her back last time," an MRI evidenced an annular tear which he suggested "should be treated with conservative therapy before considering any surgical procedure," and an impression of "fibromyalgia; positive ANA; [history] of depression; [history] of thyroid nodule; [high blood pressure]; annular tear at L5-S1; [and] obesity"); Tr. 1021 (discussing the surprising finding of possible erosion in one wrist but that he could not personally see the results and that

---

[1] The Commissioner does not provide any similar defense of the ALJ's characterization of Dr. Crouch's October 2016 treatment note.  *See* Tr. 50; Def.'s Mem. 13–20.

*Charlene S. v. Saul*
Civil No. DLB-20-853
May 26, 2021
Page 7

"lab studies from July show negative RF and CCP antibody[,]  [h]er ANA reverted to negative[,] [h]er ESR was mildly elevated at 44 with a normal up to 20[,]  [h]er CRP was impressively elevated[,] FMS is the dominant process, [and that plaintiff] "did not feel any better with a generous dose of Prednisone suggesting that an inflammatory process is either not present or that any improvement in her [symptoms] was lost in the muscle pain."). The record makes clear that Dr. Crouch considered fibromyalgia the primary cause of plaintiff's complaints of widespread pain and that his discussion of the lack of objective signs of other possible causes including rheumatoid arthritis mostly confirmed his impression. Thus, the abnormal results from Dr. Crouch's notes that teed off each of the above block-quoted paragraphs from the ALJ's decision speak directly to plaintiff's fibromyalgia. *See* Tr. 50–52. The normal objective results the ALJ picked up substantiated, rather than undermined, plaintiff's complaints. Yet, the ALJ set off those results with the word "however," demonstrating his use of those objective results to discount plaintiff's fibromyalgia. This reasoning is erroneous after *Arakas*. *See Arakas*, 938 F.3d at 97–98. His use of the same records to discount plaintiff's physical impairments other than fibromyalgia is not at issue in this case. The issue is how the ALJ used those records in his decision with respect to his findings about plaintiff's fibromyalgia.

Crystallizing this legally erroneous reasoning is the disagreement between plaintiff and the Commissioner over the meaning of the penultimate sentence of the paragraph in which the ALJ considered Dr. Crouch's March and September 2017 treatment encounters and included a statement about plaintiff's conservative treatment for her "back pain." *See* Pl.'s Mem. 19–20 (arguing the ALJ's rejection of plaintiff's symptoms based on conservative treatment is inappropriate because the only existing treatments for fibromyalgia are conservative); Def.'s Mem. 15 (arguing this note is clearly about plaintiff's other severe back impairment and not about her fibromyalgia). Each, however, is partly correct.

The treatment note specifically indicates plaintiff's "MRI results of an annular tear should be treated with conservative therapy before considering any surgical procedure." Tr. 938. Thus, the treatment note itself confines the recommendation of conservative treatment to plaintiff's annular tear. Yet, the ALJ's decision does not do the same. Rather, the ALJ appended this statement to a discussion of what is otherwise clearly about plaintiff's fibromyalgia. Dr. Crouch, who repeatedly expressed his opinion that fibromyalgia undergirded much of plaintiff's widespread pain, discussed Cymbalta, Savella, Lyrica, and trigger point injections as treatments in this treatment note. Tr. 938. These medications are used to treat fibromyalgia.[2] Thus, when Dr. Crouch (and, by extension, the ALJ) discuss Savella and trigger point injections in the context of plaintiff's back pain, they are discussing plaintiff's back pain in the context of plaintiff's fibromyalgia. The ALJ followed this discussion with a treatment note confined in the record to

---

[2] Mary L. Forte, Mary Butler, Katherine E. Andrade, Ann Vincent, John T. Schousboe, and Robert L. Kane, *Treatments for Fibromyalgia in Adult Subgroups, Table 1: FDA-approved drugs for the treatment of fibromyalgia*, Agency for Healthcare Research and Quality, U.S. Dep't of Health and Human Services, *available at* https://www.ncbi.nlm.nih.gov/books/NBK274463/table/introduction.t1/ (last visited Apr. 9, 2021) (listing the three drugs FDA-approved for treating fibromyalgia: Lyrica, Cymbalta, and Savella); *see also Fibromyalgia: How is fibromyalgia treated?*, American College of Rheumatology, *available at* https://www.rheumatology.org/I-Am-A/Patient-Caregiver/Diseases-Conditions/Fibromyalgia (last visited Apr. 9, 2021).

*Charlene S. v. Saul*
Civil No. DLB-20-853
May 26, 2021
Page 8

plaintiff's annular tear.  But the ALJ generalized the note as relevant to her "back pain," which the entire preceding paragraph discussed in the context of plaintiff's fibromyalgia.  *See* Tr. 51, 938. Whatever these normal objective findings actually amounted to in the record, the fact is the ALJ used these findings to discount plaintiff's fibromyalgia, considering both the language he pulled from them and the organization of his paragraphs discussing Dr. Crouch's treatment notes.  *See Arakas*, 983 F.3d at 102 (finding that the ALJ's "decision exhibit[ed] a pervasive misunderstanding of fibromyalgia" and remanding for benefits).

Second, if, as the Commissioner contends, the ALJ did not discuss these records in reference to plaintiff's fibromyalgia, then the ALJ did not discount plaintiff's fibromyalgia much—or at all—during the RFC discussion.  Dr. Crouch supplied the vast majority of the medical evidence substantiating plaintiff's fibromyalgia as a medically determinable mental impairment. Indeed, the ALJ cited only his treatment notes and plaintiff's hearing testimony for the evidence leading the ALJ to conclude that plaintiff was impaired by fibromyalgia.  *See* Tr. 46 (citing Exhibit B7F, or Dr. Crouch's treatment notes).  The only mention of fibromyalgia during the ALJ's RFC analysis outside of Dr. Crouch's treatment notes is to a diagnosis of fibromyalgia from a neurological examination by Dr. Richard Bird, who assessed plaintiff for tremors—not fibromyalgia.  *See* Tr. 50–52, 1032–34.  Nor did Dr. Bird present any evidence suggesting plaintiff did not have or was not affected by fibromyalgia.  *See* Tr. 1032–34.  The ALJ did not carefully demarcate at which point his discussion went from one pain-inducing impairment to another.  *See* Tr. 50–52.  But some of the discussion the Commissioner argues was not of plaintiff's fibromyalgia must have been, or else the ALJ simply did not discount plaintiff's fibromyalgia at all.

Thus, because the ALJ discounted plaintiff's fibromyalgia symptoms using irrelevant, objective evidence, remand is necessary.  For the reasons set forth herein, plaintiff's motion for summary judgment, ECF 14, is denied, and the Commissioner's motion for summary judgment, ECF 15, is denied.  Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is reversed in part due to inadequate analysis.  The case is remanded for further proceedings in accordance with this opinion.

Despite the informal nature of this letter, it should be flagged as an opinion.  A separate order follows.

Sincerely yours,

/s/

Deborah L. Boardman
United States Magistrate Judge